

The following constitutes
the order of the court. Signed December 2, 2015

_____
Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

LANDMARK WEST, LLC, a California Limited Liability Company,

Debtor.

Case No. 11-44240 CN
Chapter 11

**MEMORANDUM DECISION RE: LOANVEST CLAIM**

On November 17, 2015, this court conducted an evidentiary hearing to determine the amount due secured creditor Loanvest IX,L.P. ("Loanvest") under the terms of Landmark West, LLC's confirmed Chapter 11 plan of reorganization. All appearances were made on the record, and the following constitutes this court's findings of fact and conclusions of law under F.R.B.P. 7052.

Kensington Apartment Properties, LLC ("Kensington") commenced this contested matter when it filed a motion to determine the amount due Loanvest under Landmark's Chapter 11 plan. Kensington filed its own Chapter 11 case several months before Landmark filed this bankruptcy case, and it confirmed its Chapter 11 plan almost a year before this court confirmed Landmark's Chapter 11 plan. Both Chapter 11 plans address the Loanvest note. While Landmark has nominally joined in all of Kensington's arguments in this contested matter[1], the motivation behind their efforts is clear. Kensington and Landmark were co-obligors on the underlying promissory note owed to Loanvest, and Kensington seemingly believes that the Landmark's Chapter 11 plan requires a

---

[1] Landmark's Chapter 11 counsel sat at the Kensington counsel's table during the hearing and remained mute throughout.

smaller payout to Loanvest. Kensington is now marketing its parking garage which secures the Loanvest claim, and it seeks to use the (allegedly) more favorable terms of the Landmark plan to satisfy its own plan obligations to Loanvest.

Kensington may not look to Landmark's Chapter 11 plan to determine what it owes Loanvest under its own plan. While Kensington and Landmark were co-obligors under the Loanvest note, their confirmed Chapter 11 plans treat the Loanvest note differently, thereby creating two separate (albeit related) contractual obligations. This motion was filed in the Landmark, not the Kensington, bankruptcy case, and the two cases were not administratively or substantively consolidated. Accordingly, this court is only determining the amount that Landmark owes Loanvest under its confirmed Chapter 11 plan of reorganization.

**The Facts**

The parties do not dispute the bulk of the underlying facts. Kensington and Landmark are generally controlled and owned by the same person: Daniel Lieberman. In December 2007, Kensington and Landmark borrowed $484,000 from Loanvest[2] (the "Note"). The Note called for monthly, interest-only payments with the principal balance due on January 2, 2010. The Note carried a 13% interest rate, with a default interest rate of 20%. The default interest rate provision states in pertinent part that "From and after the maturity of this Note, or such earlier date as all principal owing hereunder becomes due and payable by acceleration or otherwise, the outstanding principal balance of this Note shall bear interest until paid in full at an increased rate per annum . . . equal to seven percent (7%) above the rate of interest from time to time applicable to this Note." Kensington secured the Note with a senior deed of trust against real property located 2601 East 20th Street in Oakland (the "Parking Garage"), and Landmark secured the Note with a junior deed of trust against real property located at 3640 Grand Avenue in Oakland.

Kensington and Landmark did not pay off the Note in January 2010, and the parties, as part

---

[2] While Lieberman signed the Note in his capacity as the managing member of Kensington and Landmark, the Note identified Lieberman as the borrower. This was corrected by an "Amendment to Loan Documents (the "Loan Amendment") signed by the parties in February 2010, which, among other things, named Kensington and Landmark as the borrowers.

2

**MEMORANDUM DECISION RE: LOANVEST CLAIM**

of the Loan Amendment, extended the Note's maturity date to November 1, 2012. The Loan Amendment did not otherwise alter the relevant terms of the Note. Kensington and Landmark soon thereafter defaulted, and Loanvest declared the Note immediately due and payable (by letter dated November 29, 2010), and later recorded a notice of default and notice of trustee's sale. Kensington filed its Chapter 11 on December 6, 2010, and Landmark filed its own Chapter 11 case on April 19, 2011.

Kensington confirmed its Chapter 11 plan by order dated August 3, 2011 (the "Kensington Plan"), and Landmark confirmed its second amended Chapter 11 plan by order dated August 31, 2012 (the "Landmark Plan"). While both plans provide for the Note, Kensington and Landmark's treatment of it significantly differ. The Kensington Plan (pursuant to the terms of the "Loanvest Amendment to Debtor's First Amended Chapter 11 Plan As Modified," filed on July 5, 2011) states that the Note "shall be treated as fully secured and paid:

1. $10,000 on account within 15 days of the Effective Date;
2. $2100 per month for a period of 48 months from the Effective Date; the Claim shall be paid in full within 48 months after the Effective Date.
3. Property taxes on the subject collateral shall be paid on a current basis.

The amount of the claim shall include post-petition interest and fees pursuant to section 506(b) of the Bankruptcy Code. The Plan does not purport to reduce the amount of the claim in any way, including, but not limited to, post-petition interest and all other charges provided under the loan agreement with the Debtor. Any deficiency between the payments during the 48 months following the Effective Date and the principal and interest amounts that the Holder is entitled to during such time shall be added to the unpaid principal balance to be paid at the end of the plan term. Pending payment in full as provided herein, [Loanvest] shall retain its lien against the Garages and, upon fifteen days written notice to the Debtor and his counsel, shall be free to enforce its state law remedies to foreclose its Allowed Secured Claim if not paid as provided herein. The Debtor, may, at

3

**MEMORANDUM DECISION RE: LOANVEST CLAIM**

any time, prepay in whole or in part, [the Note], without a prepayment fee."[3]

In contrast, Landmark's Plan (pursuant to the "Modification To Second Amended Plan Of Reorganization Dated June 1, 2012, As Modified, Proposed By Debtor Landmark West, LLC," filed on July 24, 2012) treats the Note in pertinent part as follows:

> [Loanvest] shall retain its second in priority security interest in the Property and shall be treated as if fully secured for the allowed amount thereof. Interest shall accrue on the unpaid balance of [Loanvest'] Allowed Secured Claim at the non-default interest rate provided in the Promissory Note secured by the second in priority deed of trust upon the Property until October 1, 2015. The Plan does not purport to reduce the principal balance of the claim in any way. The projected amount of the claim shall include post-petition interest without reduction of the interest rate until the Effective Date, and fees pursuant to section 506(b) of the Bankruptcy Code, and thence shall bear interest at the non-default 'note rate." If the claim is paid in full on or before October 1, 2015, [Loanvest] will waive post Effective Date interest in excess of 6.5% per annum. . . . [Loanvest] shall retain its lien against the Property and, upon fifteen days written notice to the Debtor and his counsel, shall be free to enforce its state law remedies to foreclose its Allowed Secured Claim if not paid as provided herein."

These plan provisions, for whatever reason, differ. A calculation under one is not necessarily a calculation under the other. If Kensington wishes to determine the amount due Loanvest under the Kensington Plan, it should reopen its case and file a motion seeking such relief. While Kensington offered into evidence various post-confirmation documents, including emails, which identify the borrowers as both Kensington and Landmark, these documents do not demonstrate that Kensington may pick and choose how it must satisfy Loanvest's claim. These documents were not drafted by Loanvest, and Loanvest's managing director repeatedly and consistently testified that he, after confirmation of the two Chapter 11 plans, did not equate the two obligations or consider them to be

---

[3] The Kensington Plan's effective date was the 31st day after the entry of the confirmation order. Accordingly, Loanvest's claim under the Kensington Plan was fully due and payable on September 3, 2015.

4

**MEMORANDUM DECISION RE: LOANVEST CLAIM**

the same (since the Kensington and Landmark Plans treated the Loanvest claim differently). Again, this court is only interpreting the Landmark Plan's treatment of Loanvest's claim.

Landmark and Loanvest have stipulated that the Note balance on Landmark's petition date was $520,000. They also agree that Kensington made the initial $10,000 payment and each of the 48 monthly payments under the Kensington Plan to Loanvest, and that these amounts (totaling $110,800) should be credited against the balance due Loanvest under Landmark's Plan. The parties strongly disagree, however, regarding the interest rates applicable to Loanvest's claim under the Landmark Plan. While Landmark's Plan treatment of the Note is not a paragon of clarity, it is not ambiguous, and this court can decipher its terms.

### The Law

The Ninth Circuit has held that a "Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted accordingly to the rules governing the interpretation of contracts." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004). Language in a contract is not made ambiguous simply because the parties fail to agree on its interpretations. *See Boudreau v. Borg-Wartner Acceptance Corp.*, 616 F.2d 1077, 1079 (9th Cir. 1980). It is a well-established maxim of contractual interpretation that a contract is ambiguous if it is "capable of more than one reasonable interpretation." *Badie v. Bank of America*, 67 Cal.App.4th 779, 798 (1998). Ambiguity is a question of law, and any uncertainty is construed against the drafter. *See, e.g., Schmidt v. Macco Construction Co.*, 119 Cal.App.2d 717 (1953); *Interpetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp.*, 719 F.2d 992, 998 (9th Cir. 1983); Cal.Civ.Code § 1654. Where a contract is ambiguous, "it is the court's task to determine the ultimate construction to be placed on ambiguous language by applying the standard rules of interpretation in order to give effect to the mutual intention of the parties." *Id*. at 286. Moreover, this court must provide an interpretation that will make an agreement operative, definite, reasonable, and capable of being carried into effect, and must avoid an interpretation that would make it harsh, unjust or inequitable. *City of El Cajon v. El Cajon Police Officers' Assn.*, 49 Cal.App. 4th 64, 71 (1996). To accomplish this, the court cannot ignore any language or make any sentence or clause superfluous. Moreover, the Landmark Plan is an integrated document, and parol evidence cannot be used to add to or vary its terms. *Masterson v.*

5

Case: 11-44240    Doc# 198    Filed: 12/02/15    Entered: 12/03/15 12:09:12    Page 5 of 9

*Sine*, 68 Cal.2d 222, 225 (1968).

        The parties' dispute stems from the second and fourth sentences in the paragraph which describes Landmark's treatment of the Loanvest claim. The second sentence reads in pertinent part that "Interest shall accrue on the unpaid balance of [Loanvest's claim] at the non-default interest rate provided in the Promissory Note. . . . The fourth sentence, states, however that "The projected amount of the claim shall include post-petition interest without reduction of the interest rate until the Effective Date, and fees pursuant to section 506(b) of the Bankruptcy Code, and thence shall bear interest at the non-default "note rate."'" While both parties agree that the post-effective date interest rate (setting aside whether the October 1, 2015 payoff deadline was met) is 13%, they dispute what the post-petition/pre-effective date interest rate is. Landmark contends that the second sentence calls for a 13% interest rate for this lengthy period. Loanvest disagrees, contending that this interpretation ignores the equally express language in the fourth full sentence, which states that the post-petition interest will not be reduced until the Effective Date, when its claim will then bear the non-default, 13% interest rate. Loanvest contends that since Landmark was in default on the petition date, the default interest rate applies during the post-petition/pre-effective date period.

        This court agrees with Loanvest's reading of the Landmark Plan. The word "shall" is being used to "express simple futurity," and thus refers to what the interest rate will be in the future, i.e., post-effective date. *Webster's New Collegiate Dictionary*, (1979). The fourth sentence unmistakably establishes the interest rate for the post-petition, pre-effective date period (i.e. the past).[4] Any other interpretation would make the second clause of the fourth sentence superfluous. Accordingly, the 20% default interest rate is the applicable post-petition/pre-effective date rate. Moreover, the reduced 6.5% interest rate is inapplicable, since Landmark did not satisfy Loanvest's claim by October 1, 2015.

        The amount due Loanvest as of November 17, 2015 (excluding attorney's fees and costs) therefore is found in the "third option" of Loanvest's trial brief (admitted as Exhibit 20, and as corrected during closing argument), and totals $770,820.83.

---

    [4] Unlike the fourth sentence, the second sentence has no other reference point.

Loanvest is also entitled to fees under Bankruptcy Code § 506(b). Loanvest first seeks reimbursement for the $8,887.50 in fees and costs paid to Stephen Finestone and Old Republic Title. Finestone's fees include time spent on both the Landmark and Kensington bankruptcy cases. This court will only award fees which relate to the Landmark bankruptcy. Having reviewed Finestone's fees (found in Exhibit AE), the court believes that the reasonable amount associated with the Landmark case is $2,849.00, along with costs of $127.00. Loanvest also seeks reimbursement of the fees and costs of the Wendel, Rosen law firm, which represented it in this contested matter (its fees and expenses are in Exhibit AF). While Exhibit AF indicates that $18,293.40 in fees and expenses were incurred, the monthly invoices do not describe what services were provided. The court cannot determine whether these fees are "reasonable" under Bankruptcy Code § 506(b) without such a description. Accordingly, the balance due Loanvest as of November 17, 2015 is $773,796.83.

Kensington argues that even if this court adapts Loanvest's reading of the Landmark Plan, this court cannot apply the default interest because it is an unlawful "penalty" and not an appropriate liquidated damages clause under California law. Kensington's contention is meritless. First, Bankruptcy Code § 1141(a) estops Landmark and Kensington from raising the legality of the default interest rate. Section 1141(a) provides in pertinent part that "the provisions of a confirmed plan bind the debtor . . . and any creditor, equity security holder, or general partner in the debtor, whether or note the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder has accepted the plan." Simply, § 1141 prevents parties from raising claims or issues that could have or should have been raised before confirmation but were not. 8-1141 Collier on Bankruptcy, ¶ 1141.02. A final order confirming a Chapter 11 plan bars litigation of all issues that could have been raised in connection with confirmation. *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995). This res judicata effect extends to both claims that were actually litigated and claims that could have been raised in the confirmation proceedings. *In re Cogliano*, 355 B.R. 792, 804 (9th Cir. Bankr. 2006); *In re Arriva Pharm., Inc.*, 456 B.R. 419, 424 (Bankr. N.D.Cal. 2011).

Even if Kensington and Landmark are not barred from raising this issue, California Civil Code § 1671(b) creates a presumption of validity for a liquidated damages clause, and places the

7

**MEMORANDUM DECISION RE: LOANVEST CLAIM**
Case: 11-44240   Doc# 198   Filed: 12/02/15   Entered: 12/03/15 12:09:12   Page 7 of 9

burden on the party seeking to invalidate it to demonstrate that the provision is unreasonable under the circumstances existing when the contract was executed. *See Weber, Lipshie & Co., v. Christian*, 52 Cal.App.4th 645, 654 (1997). Kensington and Landmark did not meet this burden of proof, as they offered virtually no relevant evidence addressing the circumstances surrounding the Note's execution.

Finally, Kensington argues that Loanvest tortiously interfered with its attempt to pay the Note by October 1st. The evidence proves otherwise.[5] While Loanvest was informed that Landmark was seeking to refinance its Grand Avenue property, Lieberman conceded that the refinance would not generate the funds necessary to satisfy Loanvest's claim, and there was no evidence indicating that he had opened a refinance escrow.[6] Moreover, if the parties anticipated that the sale of the Parking Garage would satisfy the Loanvest claim (under either the Landmark or Kensington Plan), the evidence firmly establishes that Loanvest submitted a demand into the Parking Garage escrow. Lieberman also conceded that neither Landmark nor Kensington tendered the necessary funds to meet the October 1, 2015 deadline. Simply, if Kensington disagreed with the amount of Loanvest's escrow demand, it should have opened its Chapter 11 case to seek appropriate relief.

**\* \* \* END OF ORDER \* \* \***

---

[5] Kensington's counsel raised this issue during trial, but tellingly did not address it in its trial brief.

[6] The court sustains Loanvest's hearsay objection to Exhibit 15.

8

**MEMORANDUM DECISION RE: LOANVEST CLAIM**

Case: 11-44240    Doc# 198    Filed: 12/02/15    Entered: 12/03/15 12:09:12    Page 8 of 9

Case No. 11-44240 CN

**COURT SERVICE LIST**

Landmark West, LLC
Attn: Daniel Lieberman
3640 Grand Avenue, Suite 207
Oakland, CA 94610

Electronically mailed to ECF registered participants

9

**MEMORANDUM DECISION RE: LOANVEST CLAIM**
Case: 11-44240    Doc# 198    Filed: 12/02/15    Entered: 12/03/15 12:09:12    Page 9 of 9